IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| NARESH MIRCHANDANI, et al., | | |
| Plaintiffs, | * | |
| | | |
| v. | * | Civil Action No. BPG-04-1099 |
| | | |
| | * | |
| HOME DEPOT, U.S.A., Inc., | | |
| et al., | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM AND ORDER</u>

The above-referenced products liability case has been referred to me for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). Plaintiffs, Naresh and Cheryelona Mirchandani, seek damages arising from plaintiff Naresh Mirchandani's fall from an allegedly defective ladder that was manufactured by defendant Krause Inc. (Krause) and sold to plaintiffs by defendant Home Depot, U.S.A., Inc. (Home Depot). Plaintiffs allege that the ladder, a 16-foot "Multi-matic" articulated ladder, collapsed as plaintiff Naresh Mirchandani was climbing it due to a failure in one or both of the hinges between the first and second sections of the four-sectioned ladder. Plaintiffs' theory attributes the failure of the hinges to a defectively designed or manufactured locking bolt. Specifically, plaintiffs allege that one or more of the ladder's locking bolts were composed of a zinc alloy that allowed the bolt to become

scarred and eventually to migrate from the "locked" to the "unlocked" position, because it was too soft and porous to withstand compressive forces exerted upon it when the ladder was put to normal use.

Plaintiffs have requested the opportunity to substantiate their theory by conducting metallurgical and hardness tests on one of the two bolts in the relevant hinges. Because such testing would irreversibly alter the bolt subjected to testing, and consequently, the composition of the ladder at issue in this case, plaintiffs' motion may be characterized as a motion for "destructive testing." For reasons stated on the record during a hearing on this issue held on April 26, 2006, plaintiffs' motion was granted. The purpose of this Memorandum and Order is to detail the basis of the undersigned's previous oral ruling.

## I.   The Discovery Rules Applicable to Plaintiffs' Motion

The primary dispute presented by plaintiffs' motion is whether plaintiffs may permanently alter a component of the product alleged to be defective in this lawsuit, through testing that they submit will allow them to prove their case against defendants. Federal Rule of Civil Procedure 34(a)(1) provides that a party may make a request for production to "inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b)." In turn, Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any

matter, not privileged, that is relevant to the claim or defense of any party."

Several courts have recognized that production of "tangible things" for purposes of destructive testing falls under the scope of Rule 34. Spell v. Kendall-Futuro Co., 155 F.R.D. 587, 587 (E.D. Tex. 1994); Dabney v. Montgomery Ward & Co., Inc., 761 F.2d 494, 498 (8th Cir. 1985); Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 (D. Minn. 1988); see also 7 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 34.14[6], pp. 81-82 (3d ed. 2005) (collecting cases). In this case, however, plaintiffs do not require production of the ladder for testing as they are already in possession of it. Accordingly, as a purely technical matter, plaintiffs' motion is more properly viewed as a motion for protective order under Federal Rule of Civil Procedure 26(c). Had plaintiffs proceeded to destructively test components of the ladder without first seeking guidance from the court, they would have risked the consequences that may befall a litigant deemed to have engaged in spoliation of evidence, such as an adverse inference instruction to the jury, Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155-57 (4th Cir. 1995), or even outright dismissal of their case, Silvestri v. General Motors Corp., 271 F.3d 583 (4th Cir. 2001). Whether the motion is made under Rule 34 or Rule 26, however, the applicable standard for considering their proposed testing remains the same.

II.   **The Standard for Allowance of Destructive Testing**

The standard for evaluating requests to perform destructive testing appears to have initially been developed in <u>Petruk v. South Ferry Realty Co.</u>, 157 N.Y.S.2d 249 (N.Y. App. Div. 1956).   In <u>Petruk</u>, a window washer was injured when the bolt on a safety anchor that protruded from the building he had been working on broke.   <u>Id.</u> at 251.   The window washer sued the owner of the building, alleging that the bolt did not meet regulatory standards. <u>Id.</u>  The owner, who brought the installer of the bolt into the case as a third-party defendant, sought to destructively test the bolt by cutting out a section of the bolt, and subjecting the excised section to a strength test, chemical analysis, and microscopic examination.   <u>Id.</u> at 251-52.   The installer of the bolt challenged the proposed testing, arguing (without elaboration) that it would be prejudiced if it could not show the bolt to the jury in its unaltered state.   <u>Id.</u> at 253.

The court allowed for the destructive testing after zeroing in on the fact that the installer could not demonstrate how it would be prejudiced if the destructive testing were to take place prior to the bolt being shown to the jury.   <u>Id.</u>  The court observed that the unaltered, pretesting state of the bolt could be preserved by photographing it and the fact that all parties were permitted to examine the bolt prior to the destructive testing.   <u>Id.</u>  With these safeguards in place, the balance was found to have tipped in favor

of allowing the defendant-owner to obtain the scientific evidence that the court characterized as crucial to the third-party case (and indeed the primary case).[1]  <u>Id.</u>

Building on <u>Petruk</u>, the Supreme Court of Colorado elaborated on the issue of destructive testing in <u>Cameron v. District Court</u>, 565 P.2d 925 (Colo. 1977).  <u>Cameron</u> involved an allegedly defective tire that injured the plaintiff while he was attempting to mount it himself at a service station.  <u>Id.</u> at 927.  As plaintiff was attempting to "seat the tire bead," that is, fitting the tire bead – the ring of steel and rubber that allows the tire to grip the rim and the mounting wheel – the bead ruptured and the tire exploded, injuring the plaintiff.  <u>Id.</u>  To aid his suit against the retailer, the plaintiff proposed excising a portion of the tire, to metallurgically test the inner wire strands of the bead near the ruptured area.  <u>Id.</u> at 927-28.  After a thorough analysis of the issue, the court allowed for the destructive testing.  <u>Id.</u> at 931.

The court framed the issue as requiring a balancing between the costs of irreversibly altering the object and the benefits of

---

[1] The reasoning of <u>Petruk</u> was squarely reaffirmed in <u>Foster-Lipkins Corp. v. Suburban Propane Gas Corp.</u>, 339 N.Y.S.2d 581 (N.Y. App. Div. 1973) (permitting destructive testing of several components of a propane gas cylinder); <u>see also</u> <u>Edwardes v. Southampton Hospital Ass'n</u>, 278 N.Y.S.2d 283 (Sup. Ct. 1967) (allowing destructive testing of an intramedullary pin); and 1 Weinstein, Korn & Miller, <u>et al.</u>, NEW YORK CIVIL PRACTICE ¶ 3120.25 (2d ed. 2004)(collecting cases).  For a collection of cases from all jurisdictions, see Annotation, <u>Propriety of Discovery Order Permitting "Destructive Testing" of Chattel in Civil Case</u>, 11 A.L.R.4th 1245 (2004).

obtaining the evidence sought in the case.  Id. at 929.  The court observed that the costs of alteration can be lessened by providing for safeguards, such as by photographing the object in its original state.  Id.  The court also observed that alternative non-destructive means of obtaining the evidence should be considered. Id.  The parties agreed that the proposed test was "reasonable and necessary to proof of [plaintiff's] case."  Id.  Accordingly, the court did not expound on the "reasonable and necessary" factor, but was careful to list it as an important inquiry.  Id.

After applying this balancing test, the Cameron court allowed for the destructive testing.  Its ruling was primarily based on the fact that the condition of the tire could be captured photographically and that any evidentiary value that would be lost by virtue of the inability to present the tire to the jury in its unaltered state was insufficient to deny the development of plaintiff's expert's opinion.

Based on the discussion in Cameron, the undersigned identifies four specific inquiries relevant to the balancing test.  They are: 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to

6

minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

## III.   Application of the Four Factors to Plaintiffs' Proposals

In this case, plaintiffs seek to determine the composition of one of the two locking bolts contained within the hinges between the first and second sections of the accident ladder.  Plaintiffs theorize that, as the result of either a manufacturing or design defect, one or more of the locking bolts were too weak to withstand compressive forces exerted upon it as plaintiff Naresh Mirchandani climbed up the rungs of the ladder.  As a result, the locking bolt was "squeezed" out of place, causing the ladder to collapse.

The hardness and metallurgical tests proposed by plaintiffs involve removing the locking bolts from the hinges in which they are encased.  The bolts would then be cleaned and polished for purposes of conducting the "hardness" test.  To perform a metallographic examination of the selected bolt, a section of the bolt would be excised.  The ladder would then be reconstructed using an exemplar bolt.

### A. Reasonable, Necessary, and Relevant

The first inquiry under the four-pronged analysis is whether the proposed testing is reasonable, necessary, and relevant. Several decisions following Cameron have expanded upon this first prong.  In Dabney v. Montgomery Ward & Co., Inc., 761 F.2d 494, 498-99 (8th Cir. 1985), the Eighth Circuit upheld the trial court's

decision not to allow destructive testing of furnace louvers.  In upholding the trial court's decision, the appellate court noted that the trial court had permitted destructive testing of other portions of the furnace, and that the movant had not stated that testing the louvers would provide evidence necessary for its defense.  Id. at 498.  More importantly, the motion for destructive testing was made after the first trial of the action, for which the movant's expert had been able to offer an opinion without the evidence requested.  Id. at 499.  Accordingly, the court held that the evidence was not necessary and affirmed the trial court's order prohibiting the testing.  See also Hawthorne v. Michelin Tire Corp., 1996 WL 640481 (9th Cir. 1996) (prohibiting destructive testing of a tire as unnecessary because plaintiffs' expert had formed his opinion in the case almost two years before the destructive testing was requested); In re Newman, 782 F.2d 971, 974 (Fed. Cir. 1986) (prohibiting the Patent and Trademark Office from submitting a patent-applicant's invention to destructive testing because such testing was not necessary to determine whether the invention worked, i.e., whether it was patentable).

These cases demonstrate that a party may not use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information.  The evidence sought must be integral to proving the movant's case and do more than strengthen an already established claim or defense.

Here, defendants argue that plaintiffs' proposed testing is not necessary, because their theory of liability is speculative and because their experts have already formed their opinions in this case.   In the first instance, defendants' arguments are at loggerheads with one another.   It cannot be that the theory proposed by plaintiffs is too speculative and unsubstantiated as to not warrant discovery, and also be the case that plaintiffs' experts have substantiated their theory to the point that their opinions have already been "formed" such that additional discovery would merely bolster their opinions.   Accordingly, defendants have not shown that the proposed testing is unnecessary.

Secondly, the argument that a party's claim or defense is too weak to warrant discovery that has the potential (in this case a great potential) of substantiating its claim or defense, is misplaced here.   While plaintiffs must show that the evidence sought through destructive testing is necessary to prove their case (a more stringent standard than that applied to more routine discovery requests), the burden is not so high as to require definitive proof that plaintiffs' hypothesis will prove correct. In other words, plaintiffs need not prove their case for the opportunity to prove their case.   The fact that defendants' experts do not believe that the proposed destructive testing will enable plaintiffs to prove their case is irrelevant at this stage of the litigation.   "When experts disagree on the relevancy of certain

evidence, it would be unjust to select the view of one of those experts with the result that another party's discovery is thereby barred." Ostrander v. Cone Mills Corp., 119 F.R.D. 417, 420 (D. Minn. 1988) (allowing destructive testing of fabric swatches of nightwear alleged to have failed federal flammability standards).

Accordingly, plaintiffs have shown that their proposed testing is relevant, reasonable, and necessary.

**B.** **Prejudice to Defendants**

The second area of inquiry is the potential prejudice to defendants. The Cameron court recognized that the question whether to allow for destructive testing "becomes especially difficult where the object to be tested is unique and one side intends to use it in its 'original' state at trial." Cameron, 565 P.2d at 929. This issue was squarely addressed in Sarver v. Barrett Ace Hardware, Inc., 349 N.E.2d 28 (Ill. 1976), a case decided the year before Cameron. Sarver involved a suit against the manufacturer and retailer of a hammer that was alleged to have injured the plaintiff's eye after a piece of metal chipped off of the face of the hammer during use. Id. at 29. The defendants sought to perform a metallurgical analysis of the hammer that required that three quarter-inch holes be drilled into the side of the hammer and that a wedge-shaped section be excised from the face of the hammer. Id.

In allowing for the testing, the court observed that the jury

10

would still be able to view the hammer and the "general condition" of its striking face.  Id. at 30-31.  In addition, the original condition of the striking face was to be preserved by macrophotographs that would also be available for presentation to the jury.  Id. at 31.  See also Ostrander, 119 F.R.D. at 419 (allowing for destructive testing of a portion of fabric, but carefully noting that the result may differ "[i]n instances where the entire piece of evidence will be consumed by testing").

These cases demonstrate that a material change in the appearance of the object, even when the non-movant plans to present the object at trial, is insufficient to categorically prohibit destructive testing.

In this case, defendants argue that they will be prejudiced by the inability to conduct a live presentation in front of the jury involving the subject ladder.  Specifically, plaintiffs propose to set the ladder up in the courtroom and demonstrate that a person may climb the ladder without it collapsing.  While such a demonstration could certainly be relevant at trial, defendants have already conducted similar experiments in the laboratories of their expert witnesses.  More importantly, each of these experiments has been videotaped.  The question then, is whether the deprivation of the ability to make a live presentation to the jury - as opposed to showing the jury a videotaped presentation - is enough to outweigh the benefits of providing plaintiffs the ability to test the

hardness and composition of the locking bolts.[2]

Here, even after the destructive testing, defendants will still have the opportunity to present their defense to the jury by videotaped presentation and the testimony of their experts who have examined the ladder at length. Accordingly, the undersigned concludes that any prejudice to defendants caused by the destructive testing is minimal, particularly when compared with the benefits potentially derived from the discovery sought. Moreover, because the ladder will be reconstructed with all but one of its original parts, the jury will still be able to observe the ladder in its "general condition." Sarver, 349 N.E.2d at 31. Therefore, consideration of the potential prejudice to defendants weighs in favor of allowing the testing proposed by plaintiffs.

C. **Non-destructive Alternative Methods**

The third area of inquiry is whether there are any non-destructive alternative methods of testing. Defendants propose two alternative methods that they contend will yield the same data as would plaintiffs' proposed testing. There do not appear to be any cases that have turned on the validity of alternative non-destructive methods of obtaining the evidence sought. It is apparent, however, that this prong encourages the party opposing

---

[2] It should be observed that defendants' proposed demonstration, while relevant, would not provide definitive proof that plaintiffs' theory of the case is incorrect. Plaintiffs do not contend that the ladder will collapse each and every time that an individual attempts to climb it.

destructive testing to suggest less destructive and less prejudicial counter-proposals, and appears to be limited only by the imagination of the non-movant.  As alluded to in <u>Ostrander</u>, an order approving destructive testing should seek to preserve as much of the object as possible.  A non-movant's counter-proposals may aid in the effort to minimize the degree of destruction of evidence.

In this case, defendants first suggest that, in lieu of dismantling the ladder and destructively testing one of the locking bolts, plaintiffs photograph the bolts inside the hinges by using a boroscope.  No form of photography, however, regardless of its level of sophistication, can be used to determine the composition and hardness of the allegedly defective locking bolt.  Accordingly, because the evidence sought by plaintiffs could not be obtained through photography, defendants' photography proposal does not qualify as a reasonable alternative.

Secondly, defendants suggest that only the end of one of the bolts be excised for testing, a method that would spare the need to disassemble the ladder.  Plaintiffs respond that the end of the bolt is not necessarily representative of its main sections and would, therefore, provide an inadequate sample of the rest of the bolt.  Because the condition and composition of the bolt's main portions are at issue in this case, this proposed alternative will not yield the same data sought by plaintiffs and, therefore, is

rejected.

In sum, defendants have not proposed viable alternatives to plaintiffs' proposed destructive testing.

**D.   Adequate Safeguards**

The final inquiry of the four-pronged test involves consideration of the safeguards that may be put in place to minimize the potential for prejudice to the non-movants.  The court in Cameron provided an extensive list of possible safeguards.  This list includes:

> (1) [A]dequate opportunities for the [non-movants] to photograph or otherwise record the character and condition of the [object to be tested] prior to the destructive testing, (2) notice to the [non-movants] of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the [non-movants] and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the [non-movants] to conduct or participate in similar tests with a portion of the sample to be tested, (5) provision for discovery of the results of the [movant's] tests, (6) allocation of costs as justice may require.

Cameron, 565 P.2d at 931.

Other courts have elaborated upon the above-noted safeguard regarding the ability to record the procedures involved in the destructive testing.  In Ostrander, 119 F.R.D. at 421, the court's order provided that the non-movants could videotape or photograph the destructive testing proceedings as they deemed appropriate, subject to a finding that such recording unfairly compromised the

testing.  In addition, the court imposed an affirmative duty upon the movants to "fully videotape each test from its inception to its conclusion."  Id.; accord Spell v. Kendall-Futuro Co., 155 F.R.D. 587, 588 (E.D. Tex. 1994) (imposing the same duty).

As an additional safeguard, the Ostrander and Spell courts also provided the non-movants leave to depose the movant's experts about the testing procedures and the results of the tests. Ostrander, 119 F.R.D. at 421; Spell, 155 F.R.D. at 588.  The orders also provided the non-movants with the opportunity to show cause why "any other persons substantially involved in the performance of the testing" should also be deposed.  Ostrander, 119 F.R.D. at 421; Spell, 155 F.R.D. at 588.

In this case, numerous safeguards are in place to minimize any potential prejudice to defendants resulting from the destructive testing.  As noted, defendants have already been afforded the opportunity to fully inspect the ladder and to conduct experiments on it.  The original state of the ladder has been preserved through videotape and photography.  Defendants will be able to attend the testing and all of the testing procedures will be photographed.  In addition, plaintiffs have produced a detailed protocol explaining all of the procedures involved with the testing they intend to perform and ensuring that any modifications to the evidence are to be kept to a minimum.  In sum, adequate safeguards are in place to minimize the potential for prejudice to defendants.

15

**IV.  Conclusion**

Based upon the foregoing, the undersigned concludes that consideration of the relevant factors detailed above aptly demonstrates that the balance is tipped in favor of permitting the limited destructive testing proposed by plaintiffs, in accordance with the protocol and safeguards proposed by plaintiffs.  For the foregoing reasons, as stated in the April 26, 2006 hearing, it is HEREBY ORDERED this 31st day of May, 2006, that Plaintiffs' Motion to Conduct Inspection and Testing (Paper No. 127) is GRANTED.

/s/
_____
Beth P. Gesner
United States Magistrate Judge